UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALTON CRAIN,<br><br>    *Plaintiff*,<br><br>v.<br><br>CITY OF SELMA, THOMAS DALY,<br>JAMES PARMA, KENNETH ROBERTS,<br>JOHNNY CASIAS, KEVIN HADAS,<br>PHILLIP SWINNEY, HARRY GREENE,<br>KENNETH HARRIS, LARRY VERNER,<br>ROBERT KLAENER, and<br>MARC SCHNALL,<br><br>    *Defendants.* | § § § § § § § § § § § § § §  Civil Action No.  SA-16-CV-408-XR |

**ORDER**

On this day, the court considered Defendant Marc Schnall's Motion to Dismiss (Docket no. 13), the remaining Defendants' Motion to Dismiss (Docket no. 14), Magistrate Judge Henry J. Bemporad's Report and Recommendation (Docket no. 29), and Plaintiff Alton Crain's responses and objections (Docket no. 36).

**BACKGROUND**

Plaintiff Alton Crain alleges that he participated in a public excess-property auction held by the City of Selma in November 2014. Docket no. 1 at 7. Crain alleges that he and two other bidders submitted an offer for "Parcel #5." *Id.* Plaintiff, an African American, claims that he submitted his bid by the December 19 deadline, and was not offered the opportunity to resubmit his bid. *Id.* Plaintiff alleges that the other two bidders—a white individual and a Hispanic individual—were both invited to resubmit previously nonconforming bids. *Id.* at 7-8. Plaintiff claims that he witnessed Defendant John Casias correcting auction winner Jose Bustos' initially faulty bid and encouraging Bustos to resubmit his offer. *Id.* at 11-12. Plaintiff further alleges

1

that Bustos' final bid was stamped as received on December 22, 2014, three days after the posted due date. Docket no. 1 at 12, 14; Docket no. 23, Attachment B. But for these alleged bid revisions, Plaintiff claims that his bid would have been the only conforming bid for Parcel 5. *Id.* at 11; Docket no. 36 at 7. Further, "African Americans were the only race excluded from bid revisions;" thus, Plaintiff claims that the City of Selma, the named City of Selma employees, and two lawyers who represent the city violated the Fair Housing Act. Docket no. 1 at 7.

Plaintiff allegedly informed city officials of the bid inconsistencies. Docket no. 1 at 7. Plaintiff filed a complaint on September 29, 2015 with the Texas Workforce Commission Civil Rights Division and the Department of Housing and Urban Development, and asked the city to preserve all relevant evidence pending litigation. *Id.* at 6. He alleges that a video camera located in City Hall recorded the conversation between Bustos and Casias. *Id.* at 12. Plaintiff requested this video evidence, but alleges that the video was altered to omit the footage of Bustos and Casias discussing Bustos' bid resubmission. *Id.* at 12. The HUD and TWC investigators concluded that "there is no reasonable cause to believe that [Defendants] discriminated against the [Plaintiff] on the basis of race." Docket no. 13, Exhibit A. Plaintiff claims that the outcome of the investigation was a result of the city's alleged video tampering. Docket no. 1 at 13. (HUD . . . did not have the authority to authenticate the spoilage of the video evidence).

On May 3, 2016, Plaintiff filed this suit *pro se*. Docket no. 1. Plaintiff's causes of action include (1) spoliation of evidence claims; (2) Texas and United States Penal Code violations (3) fraudulent and negligent misrepresentation by Defendant Marc Schnall; (4) various theories of negligence by the City of Selma and its officials; and (5) violations of the Fair Housing Act.[1] *Id.*;

---

[1] In Plaintiff's Response to the Report and Recommendation (Docket no. 36), Plaintiff asserts claims for violations of various Texas Local Government Codes. These claims were not in the initial complaint. Docket no. 1; *Morin v. Caire,* 77 F.3d 116, 120 (5th Cir. 1996) (stating that in a Rule 12(b)(6) motion to dismiss, the court is limited to only the claims in the complaint).

Docket no. 23. Defendants move to dismiss all claims pursuant to Rule 12(b)(6), arguing that Plaintiff has not stated a valid cause of action, and that they have immunity. Docket no. 13 at 1; Docket no. 14 at 1.

Magistrate Judge Henry J. Bemporad reviewed the motions to dismiss and issued his report and recommendation. Docket no. 29. The report recommends that "Marc Schnall's Motion to Dismiss (Docket Entry 13), and Defendants the City of Selma, James Parma, Kenneth Roberts, Johnny Casias, Kevin Hadas, Phillip Swinney, Harry Greene, Kenneth Harris, Larry Verner, Robert Klaener's Motion to Dismiss (Docket Entry 14)" be granted. Docket no. 29 at 11. Plaintiff submitted a response objecting to dismissal his claims. Docket no. 36.

## STANDARD OF REVIEW

**1. Report and Recommendation Review Standard**

Where a party objects to the Magistrate Judge's Report and Recommendation, the court must conduct a *de novo* review. 28 U.S.C. § 636 (b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Such review means that the court will examine the entire record and make an independent assessment of the law. *See id.* However, where no objections are filed, the court reviews the recommendation only to determine whether it is clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). In this case, Plaintiff has objected to portions of the Magistrate Judge's recommendation, so the court will conduct a *de novo* review. Docket no. 36.

**2. Motion to Dismiss Standard**

Rule 12(b)(6) requires that a complaint state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In order to survive a motion to dismiss, "a complaint must contain

3

sufficient factual matter" that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), all factual allegations should be taken as true and the facts are to be construed in the light most favorable to the plaintiff. *Gines v. Horton*, 699 F.3d 812, 816 (5th Cir. 2012). "A well pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## DISCUSSION

### 1. Violations of the Fair Housing Act

Plaintiff claims that Defendants violated his rights under the Fair Housing Act. Docket no. 1 at 2. Specifically, Plaintiff claims that Defendants violated 42 U.S.C. §§ 3601, 3604, 3605. Docket no. 1 at 2, 3, 26.

### i. Standing

Judge Bemporad recommends that Plaintiff's FHA claim be dismissed because Plaintiff lacks standing. Docket no. 29 at 8. Upon *de novo* review, this Court finds that Plaintiff has standing to bring this claim. Docket no. 36 at 25. Standing under the FHA should be construed as broad as Article III allows; therefore, "courts are without authority to apply their self-imposed restrictions on standing in such suits." *Hanson v. Veterans Admin.* 800 F.2d 1381, 1384 (5th Cir. 1986). Article III requires that a plaintiff "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Thus, Plaintiff needs to allege (1) that he is a member of a protected class, and (2) that he incurred a "distinct, palpable injury arising from

the alleged discriminatory housing practice." *Shaikh v. City of Chicago*, 2001 WL 123784 (N.D. Ill. Feb 13, 2001) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)).

Here, Plaintiff has adequately pled that he was subjected to differential treatment during the auction process. Docket no. 36 at 25. Plaintiff identifies as African American and is therefore a member of a protected class. Docket no. 1. Plaintiff alleges that he bid on Parcel 5, but lost the property because the city allowed non-African American bidders to submit non-conforming bids. Docket no. 1 at 16, 18. Plaintiff alleges that his bid would have been the only conforming bid for Parcel 5, and he would have won the property but for Bustos' alleged bid resubmission. Docket no. 1 at 7, 11; Docket no. 36 at 6 ("Plaintiff's bid for Parcel #5 was the highest and only bid conforming to the published procedure as submitted bid [sic] indicate."); Docket no. 36, Attachment 1A. Therefore, Plaintiff has standing to pursue an FHA claim for the alleged disparate treatment leading to his loss of the auction for Parcel 5.

### ii.     3604(b) Claims

Under 3604(b), it is illegal "to discriminate against any person in the terms, conditions and privileges of sale . . . of a dwelling, or in the provision of services or facilities in connection therewith, because of race . . ." Dwelling is defined by 42 U.S.C. § 3602(b) to include "any vacant land which is offered for sale for the construction or location thereon as a residence." Plaintiff claims that he bid on the property with the intent to build a home; this allows Parcel 5 to act as a "dwelling" for the purposes of the FHA. Docket no. 1 at 10; *See* 42 U.S.C. § 3602(b).

In *Pack v. Fort Washington II*, the court held that "[a] plaintiff may proceed under § 3604(b) under either disparate impact or disparate treatment, or both." 689 F.Supp. 2d 1237, 1243 (E.D. Cal. 2009) (citing *Budnick v. Town of Carefree*, 518 F.3d 1109 (9th Cir. 2008)). Under the test laid out in *Pack*, a plaintiff states a claim under the FHA merely by showing "that

a protected group has been subjected to explicitly differential—i.e. discriminatory treatment." *Pack*, 689 F.Supp. 2d at 1243 (citing *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995)).

Here, Plaintiff contends that Defendants adopted an auction policy that discriminated against African Americans because it limited African Americans to one bid submission while allowing white and Hispanic bidders to resubmit bids and allowed them an extended timeframe in which to do so. Docket no. 36 at 6. Defendant John Casias allegedly corrected auction winner Jose Bustos' initially faulty bid, and encouraged Bustos to resubmit his offer. Docket no. 1 at 11-12. Bustos' final bid was allegedly stamped as received on December 22, 2014, three days after the posted due date. Docket no. 1 at 12, 14; Docket no. 23, Attachment B. Additionally, Plaintiff claims that Defendant Kenneth Roberts encouraged a white bidder to resubmit a revised bid. Docket no. 1 at 12. Defendants erroneously assert that Plaintiff claims his loss of the auction was in itself discriminatory. Docket no. 14 at 4. Rather, Plaintiff alleges that race-based differential treatment in the bid process resulted in the outcome. Docket no. 1. These facts set out a prima facie case of discrimination under 42 U.S.C § 3604(b) because they allege that African Americans, a protected group, have been subjected to "explicitly differential" treatment in the terms, conditions, and privileges of purchasing a dwelling. *See Pack*, 689 F.Supp. 2d at 1243. Further, to the extent Defendants argue that they did not discriminate against Crain "by accepting the highest bid on the property," docket no. 14 at 4, the Court emphasizes that Plaintiff is not complaining that he lost the auction, but that he lost the auction because of racially disparate treatment, and that he would have won absent such treatment.

    iii.    **Immunity**

Defendants claim that they are entitled to qualified immunity for the alleged FHA violation. Additionally, Defendant Schnall claims that he is entitled to attorney immunity, and the remaining Defendants assert legislative immunity.

The doctrine of qualified immunity "protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hernandez v. United States*, 757 F.3d 249, 260 (5th Cir. 2015) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)). Defendants summarily assert that "there was no such right that was clearly established at the time of the alleged conduct," docket no. 14 at 4, but the anti-discrimination provisions of the FHA have been well established since before the conduct underlying this lawsuit, and race was clearly a protected class at the time of the alleged conduct. Thus, discrimination on the basis of race in the sale of property constitutes an unreasonable violation of a "clearly established right." If Defendants engaged in racially discriminatory treatment as alleged, such conduct would violate a clearly established right of which a reasonable government official would have been aware, thus negating qualified immunity. Defendants cite a few cases, but do not provide any facts or analysis to undermine the conclusion that Plaintiff has pleaded sufficient facts to overcome qualified immunity at this time. Docket nos. 13 at 2; 14 at 3-4.

Similarly, Schnall has not met the burden of proving he is entitled to attorney immunity. Docket no. 13 at 2. Attorney immunity is "properly characterized as true immunity from suit, not [simply] a defense to liability." *Troice v. Proskauer Rose, LLP.*, 816 F.3d 341, 346 (5th Cir. 2016). This doctrine is based on the policy that attorneys should have the ability to "practice

7

their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Id.* (quoting *Cantey Hanger LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). In other words, "the defense does not extend to . . . wrongful conduct outside the scope of representation." *Cantey Hanger*, 467 S.W.3d at 484. In his motion to dismiss, Schnall states that he collected and held the bids, but does not explain how collecting and holding bids falls within the scope of representation such that it would entitle him to attorney immunity. Docket no. 13 at 2 (stating that "[a]s the City Attorney . . . Schnall collected all the bids."). He thus fails to prove his immunity defense at this time.

The remaining defendants have not met their burden of proving that their alleged actions during the auction entitle them to legislative immunity. Docket no. 14. Local legislators are immune from suit for actions defined as "legislative duties." *Summerchase LP I v. City of Gonzales*, 970 F. Supp. 522, 537 (M.D. of LA June 17, 1997).[2] "Conduct of a municipal body is likely to be deemed legislative when an elected group, such as a city council, makes a general . . . decision which applies to a large group of interests. Conversely, a municipal body's action may be more likely termed adjudicative if an appointed group . . . makes a specific decision regarding a specific piece of property." *County Line Joint Venture v. Grand Prairie*, 839 F.2d 1142, 1144 (5th Cir. 1988); *see also Bryan v. City of Madison Mississippi*, 213 F.3d 267, 273 (5th Cir. 2000) ("if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative."). Defendants have not met the burden of proving that their alleged actions during the auction were legislative rather than administrative. Docket no. 14. Consequently, Defendants have failed to prove that they are entitled to legislative immunity.

---

[2] Although absolute legislative immunity is typically discussed in the context of § 1983 claims, the Fifth Circuit has treated the doctrine as also applying to Fair Housing Act violations. *County Line Joint Venture v. Grand Prairie*, 839 F.2d 1142, 1144 (5th Cir. 1988); *Bryan v. City of Madison Mississippi*, 213 F.3d 267, 273 (5th Cir. 2000).

    iv.    **City *Monell* liability**

This court agrees with Judge Bemporad's recommendation that Plaintiff's negligence claim against the City for failure to disclose Kenneth Roberts' "educational misrepresentations for employment" should be dismissed.  Docket no. 29 at 10. The City had no duty to disclose misrepresentations on an employee's resume and otherwise did not owe Plaintiff a common-law duty, such that a stand-alone negligence claim must fail. To the extent Plaintiff alleges that the City "had a duty to assure the Plaintiff's right to a fair bid process" based on violations of the Texas Local Government Code, it is well settled that a violation of a state statute is not cognizable under section 1983 and Plaintiff has not established that these provisions establish a private right of action.  Further, violations of personnel policies are not actionable causes of action.

Plaintiff also alleges that the City of Selma is negligent for entrusting "historically deceptive City Administrator Kenneth Roberts as the ultimate authority over the entire bidding process." Docket no. 1 at 16. Plaintiff appears to allege that City of Selma was negligent in either 1) allowing Kenneth Roberts to run the bid process or 2) failing to thoroughly investigate Plaintiff's bid tampering suspicions after being notified of the tampering and "Ken Roberts history [of] fraud." Docket no. 29 at 10; Docket no. 1 at 16, 17; Docket no. 36 at 3.  Plaintiff is alleging an FHA violation and his claim seems more appropriately considered as a claim that the City's hiring or supervision of Roberts or a failure to investigate Plaintiff's allegations was a cause of the alleged FHA violation, such that the City's potential liability must be assessed under the framework set forth in *Monell*. In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipal liability could only be imposed for injuries

9

inflicted pursuant to government "policy or custom."  Defendants have moved to dismiss the claims against the City for lack of a custom or policy.

Sustaining a municipal liability claim requires more than allegations of negligence.  In his objections, Plaintiff alleges that there is a pattern of disparate treatment toward African Americans because more than one instance of the disparate treatment occurred on December 19, 2014. Plaintiff also alleges a pattern and practice of corruption when the City under Roberts' leadership "did not get City Council approval to open Sealed bid submitted during the 2014 public auction."  However, these alleged examples of pattern or practice all relate to the same incident of Plaintiff's bid, and are insufficient to establish a pattern or practice.  Further, although Plaintiff alleges a pattern and practice of corruption for over ten years, Plaintiff fails to show that these alleged instances of corruption (including such things as a history of misappropriation of funds) are substantially similar to establish a pattern or practice of conduct.  Thus, Plaintiffs' general allegations of pattern or practice fail to establish a claim against the City under *Monell*.

It is unclear whether Plaintiff alleges his claims against the individual defendants only in their individual capacities or also in their official capacities, and it is unclear who Plaintiff alleges was the ultimate decisionmaker or policymaker for the actions that he complains violate the FHA.  The Court will dismiss the claims against the City at this time, but will consider allowing Plaintiff to re-assert claims against the City if he can allege a sufficient basis for municipal liability by pointing to actions by an official City decisionmaker or policymaker that violated the FHA or were the moving force behind a violation of the FHA.

**2. Plaintiff's Spoliation of Evidence Claims and Criminal Allegations**

Plaintiff's spoliation of evidence claim does not state a valid cause of action and should be dismissed. Plaintiff objects to Judge Bemporad's recommended dismissal of the spoliation of

evidence claims. Docket no. 29; Docket no. 36. Plaintiff tracks the Federal Practice Manual[3] in his objection, arguing that he has standing to bring a spoliation claim. Docket no. 36 at 8-13. However, spoliation of evidence is not a valid, independent cause of action regardless of Plaintiff's standing.

Texas does not recognize an independent cause of action for spoliation of evidence; instead, courts rely upon adverse inference jury instructions. *Trevino v. Ortega*, 969 S.W.2d 950, 951 (Tex. 1998) ("[W]e decline to recognize spoliation as a tort cause of action."). The court in *Trevino* reasoned that "[s]poliation causes no injury independent from the cause of action in which it arises . . . . destruction [of evidence] only becomes relevant when someone believes that those destroyed items are instrumental to his or her success in a lawsuit." *Id.* at 952.

Here, Plaintiff alleges "[t]he City of Selma willfully and intentionally altered evidence needed in an investigation;" in other words, the alleged altered video footage was only relevant because Plaintiff believes it to be instrumental to his success in a lawsuit. Docket no. 1 at 7. As the *Trevino* court explained, the most logical way to deal with evidence spoliation is within the context of the lawsuit, as a discovery or evidentiary issue, and not through an independent tort. 969 S.W.2d at 953. Therefore, this court agrees with Judge Bemporad's recommendation that Plaintiff's spoliation claim does not state a valid cause of action, and should accordingly be dismissed. Docket no. 29 at 11.  The Court will deal with the spoliation issue as relevant in this litigation, but not as an independent claim for relief.

Judge Bemporad also recommends that this Court dismiss Plaintiff's criminal allegations against Defendants. Docket no. 29. The Penal Code does not create private causes of action; therefore, individuals do not have standing to participate in criminal proceedings or bring criminal claims. *Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ denied). Because Plaintiff is a private citizen, he does not have standing to bring state or federal

---

[3] http://federalpracticemanual.org/chapter3/section1

criminal claims. Plaintiff does not object to the dismissal of these claims. Docket no. 36. This court agrees with Judge Bemporad's recommendation that the criminal allegations be dismissed. Docket no. 29 at 9.

**3. Claims of Fraudulent and Negligent Misrepresentation by Defendant Schnall**

In his Response to Defendant Schnall's motion to dismiss, Plaintiff alleges Schnall made "negligent and fraudulent misrepresentations to a non-client." Docket no. 23 at 2. Plaintiff claims that because of these misrepresentations, "Plaintiff was deprived of any rights . . . protected under 42 U.S. Code § 1983." *Id.* Judge Bemporad recommended these claims be dismissed because "Plaintiff did not establish that he acted in reliance on [Schnall's] assertion." Docket no. 29 at 7. After careful review of the record, this court agrees with Judge Bemporad's recommendation.

> In order to prove negligent misrepresentation, Plaintiff must show that
>
> (1) the representation was made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The elements of fraudulent misrepresentation are essentially the same as the elements of negligent misrepresentation; however, fraud "is more difficult to prove . . . due to the added element of intent to deceive." *Grant Thornton L.L.P. v. Prospect High Income Fund*, 314 S.W.3d 913, 921 (Tex. 2010) (internal quotation marks omitted).

Here, Plaintiff alleges three different sets of factual theories to support his misrepresentation claims: misrepresentation in the bid instructions; misrepresentation in the alleged 'bid tampering'; and misrepresentation through the alleged destruction of video evidence.

criminal claims. Plaintiff does not object to the dismissal of these claims. Docket no. 36. This court agrees with Judge Bemporad's recommendation that the criminal allegations be dismissed. Docket no. 29 at 9.

**3. Claims of Fraudulent and Negligent Misrepresentation by Defendant Schnall**

In his Response to Defendant Schnall's motion to dismiss, Plaintiff alleges Schnall made "negligent and fraudulent misrepresentations to a non-client." Docket no. 23 at 2. Plaintiff claims that because of these misrepresentations, "Plaintiff was deprived of any rights . . . protected under 42 U.S. Code § 1983." *Id.* Judge Bemporad recommended these claims be dismissed because "Plaintiff did not establish that he acted in reliance on [Schnall's] assertion." Docket no. 29 at 7. After careful review of the record, this court agrees with Judge Bemporad's recommendation.

> In order to prove negligent misrepresentation, Plaintiff must show that
>
> (1) the representation was made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The elements of fraudulent misrepresentation are essentially the same as the elements of negligent misrepresentation; however, fraud "is more difficult to prove . . . due to the added element of intent to deceive." *Grant Thornton L.L.P. v. Prospect High Income Fund*, 314 S.W.3d 913, 921 (Tex. 2010) (internal quotation marks omitted).

Here, Plaintiff alleges three different sets of factual theories to support his misrepresentation claims: misrepresentation in the bid instructions; misrepresentation in the alleged 'bid tampering'; and misrepresentation through the alleged destruction of video evidence.

First, Plaintiff claims that he relied on Schnall's instructions when placing his bid. Docket no. 36 at 23. However, there is nothing to indicate that Schnall misrepresented any of the instructional information. Docket no. 23, Attachment J.  Plaintiff then claims that Schnall helped Defendant Kenneth Roberts conceal the alleged bid resubmission by opening and switching the bids. Docket no. 1 at 14. Plaintiff fails to allege reliance on Schnall's actions because Plaintiff claims he knew about both the resubmission and the switch. Docket no. 1 at 11, 14. Last, Plaintiff does not claim reliance on the destroyed video nor the city's representation that the video was intact. *Id.* at 3. Plaintiff alleges that he knew that the video omitted the footage that he needed. Docket no. 1. Because Plaintiff's factual allegations fail to establish all elements of a misrepresentation claim, the misrepresentation claims against Schnall should be dismissed.

## CONCLUSION

The court ACCEPTS IN PART Magistrate Judge Henry J. Bemporad's Report and Recommendation (Docket no. 39), but does not accept the recommendation to dismiss the Fair Housing Act claims for lack of standing.  The spoliation of evidence claims and criminal liability claims against all Defendants are DISMISSED.

Defendant Marc Schnall's Motion to Dismiss (Docket no. 13) is DENIED because Schnall has failed to prove he is entitled to immunity.  However, the Court accepts the Magistrate Judge's recommendation and DISMISSES the fraud and negligent misrepresentation claims against Defendant Schnall for failure to state a claim.

The remaining Defendants' Motion to Dismiss is DENIED IN PART and GRANTED IN PART (Docket no. 14).  The motion is denied concerning immunity because Plaintiff has sufficiently pled facts to overcome qualified immunity and no Defendants have shown they are entitled to legislative immunity.  Further, Plaintiffs' claims against the City of Selma are

DISMISSED without prejudice; the Court may consider allowing Plaintiff to re-assert claims against the City in the future should Plaintiff be able to allege sufficient facts to plausibly establish municipal liability in the future.

The motions based on immunity are denied without prejudice to those defenses being raised again, such as through a motion for summary judgment.

SIGNED this 3rd day of March, 2017.

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE