IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
March 12, 2020
Lyle W. Cayce
Clerk

No. 19-50490

D.C. Docket No. 5:16-CV-408-XR

FILED
APR - 3 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

ALTON CRAIN,

    Plaintiff - Appellant

v.

CITY OF SELMA; THOMAS DALY; JAMES PARMA; KENNETH ROBERTS; JOHNNY CASIAS; LARRY VERNER,

    Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

Certified as a true copy and issued
as the mandate on Apr 03, 2020
Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
March 12, 2020
Lyle W. Cayce
Clerk

No. 19-50490

F I L E D
APR - 3 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

ALTON CRAIN,

    Plaintiff - Appellant

v.

CITY OF SELMA; THOMAS DALY; JAMES PARMA; KENNETH ROBERTS; JOHNNY CASIAS; LARRY VERNER,

    Defendants - Appellees

---

Appeal from the United States District Court
for the Western District of Texas
5:16-cv-408-XR

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

    Alton Crain filed this lawsuit on May 3, 2016, against the City of Selma, Texas, and several of its employees ("the defendants"). Crain alleges that the defendants discriminated against him on the basis of race when they rejected his bid to purchase a parcel of property sold by the City. He also alleges that the defendants discriminated against him when they refused his attempts to appear on the ballot for the Selma City Council general election. In January 2018, the district court denied Crain's motion for sanctions based on his allegation that the defendants altered video footage in conjunction with this litigation. The district court appointed counsel to represent Crain during the

Case 5:16-cv-00408-XR Document 121 Filed 04/03/20 Page 3 of 14
Case: 19-50490 Document: 00515370809 Page: 2 Date Filed: 04/03/2020

No. 19-50490

remainder of the discovery process and granted defendants' motion for summary judgment in April 2019. Now proceeding *pro se*, Crain appeals both orders. For the following reasons, we AFFIRM.

## I.

### A.

Alton Crain is an African-American resident of Selma, Texas ("the City"). Beginning in 2012, he contacted members of the City's leadership to express his interest in purchasing a plot of land immediately adjacent to his home. At the time, the property was owned by the City. In November 2014, the City passed a resolution to sell nine parcels of City-owned land—including the plot next to Crain's property, which was designated as Parcel 5. The City published a notice soliciting bids, informing prospective bidders that all bids were required to be submitted by 5:00 p.m. on December 19, 2014.

On the afternoon of December 19, Crain arrived at City Hall. When he got there, he found City Administrator Ken Roberts and Assistant City Administrator Johnny Casias and began asking the two men questions about the bidding process. According to Crain, Roberts and Casias told him that they had received two bids for Parcel 5, but none of those bids complied with the City's procedures.[1] Crain asked Roberts for advice about how much he should bid for Parcel 5. Crain alleges that Roberts advised him to bid 3% over the property's value, as measured by the Bexar County Appraisal District ("BCAD"). Unbeknownst to Crain or the other bidders, the City had contracted with a third-party appraiser, Stouffer & Associates ("Stouffer"), to conduct an

---

[1] Specifically, the City's rules required all bids to be submitted under seal and to clearly indicate on the outside of the bid the parcel number to which the bid applied. In the process of reviewing bids for the nine parcels of land, the City rejected as non-conforming several bids that failed to specify the parcel number on the outside of the sealed bid envelope.

2

Case 5:16-cv-00408-XR Document 121 Filed 04/03/20 Page 4 of 14
Case: 19-50490 Document: 00515370809 Page: 3 Date Filed: 04/03/2020

No. 19-50490

independent valuation of the properties. While BCAD valued Parcel 5 at $16,020, Stouffer valued the property at $19,250. The City Council agreed that it would only accept bids that matched or exceeded the Stouffer appraisal value, but it did not provide this information to prospective bidders.

Crain prepared a bid for 3% above the BCAD value and gave it to Roberts. Just then, Casias abruptly left Roberts's office to take a phone call. Crain found the timing of this phone call to be "odd," so he stayed at City Hall to observe Casias's behavior. It is undisputed that Jose Bustos and his wife arrived at City Hall soon after Casias left to take a phone call, and they proceeded to meet with Casias for several minutes. According to Crain, who claims that he overheard this conversation, Casias told Bustos to use "market value" as the benchmark for his bid on Parcel 5, and instructed Bustos to ensure that the parcel number was written on the outside of his bid, as required by the City's procedures. After this conversation, Crain spoke with Bustos, who told him that Casias "had given him instructions on how to bid properly for Parcel No. 5." Casias acknowledges that he spoke with Bustos, but he denies Crain's allegation that he provided Bustos with special guidance about the bidding process.

Crain became concerned that Bustos might outbid him, so he contacted Roberts and asked if he could revise his bid. Because the deadline had not yet passed, Roberts allowed him to do so, and Crain submitted a new bid for $17,622—10% higher than the BCAD value. Still, Crain remained concerned about possible bid tampering, so he emailed Casias and Roberts on December 21 to express his fears "regarding suspicious timing and bidding instructions in the city hall lobby [in] the final bidding moments [on] Friday December 19th at approximately 4:50 p.m."

3

No. 19-50490

In total, the City received three bids for Parcel 5: a bid for $8,517 submitted by Richard Owen III; Crain's bid for $17,622; and Bustos's bid for $24,000. Owen is white and Bustos is Hispanic. On the City's "Sealed Bids Summary," all three bids are listed as conforming with the City's bid procedures. However, Crain believes that neither Owen's nor Bustos's bid complied with the City's procedures. He alleges that Owen's bid did not contain the parcel number on the outside of the sealed envelope, despite the City's express requirements. He also alleges that Bustos's bid was submitted after the bid submission deadline. It is undisputed that Bustos's bid contains a stamp indicating that it was "Received" on December 22, 2014 at 4:49 p.m.—even though the deadline for the submission of bids was 5:00 p.m. on December 19, 2014. The reason for this discrepancy is unclear. Bustos submitted an affidavit in which he stated that he submitted his bid "on December 19, 2014." According to Casias, the City Hall clerks occasionally switched the date on a "Received" stamp to the following business day late on Friday afternoons. Though he could not say for sure, Casias suggested that this switch could have happened just before Bustos submitted a timely bid on December 19.

On January 8, 2015, the City Council met to review the bids and approved the sale of Parcel 5 to Jose Bustos, the highest bidder, for $24,000. Crain was notified of the result on January 12, 2015, and he filed the instant lawsuit on May 3, 2016, alleging violations of the Fair Housing Act.

B.

While this lawsuit was pending, Crain decided to run in the May 6, 2017, election for Selma City Council. He was specifically interested in running for a position that was occupied at the time by Kevin Hadas, a white man. Crain was unfamiliar with the City's election process, so he filed an open records request for copies of already-submitted ballot applications. Casias's office

4

Case 5:16-cv-00408-XR   Document 121   Filed 04/03/20   Page 6 of 14
Case: 19-50490      Document: 00515370809     Page: 5     Date Filed: 04/03/2020

No. 19-50490

complied with the request, though it redacted the candidates' birthdates in the applications it provided to Crain.[2]

Casias's office also provided Crain with a letter explaining the City's election-related deadlines. In order to appear on the ballot, all candidates were required to submit an application to the City Secretary's office no later than February 17, 2017. Alternatively, the letter informed candidates that they could appear as a write-in candidate if they submitted an application "no later than midnight" on February 21, 2017. Despite the letter's midnight deadline, however, Casias testified that the *actual* deadline for submitting a write-in application was 5:00 p.m. Casias testified that the same letter—containing the identical error—was handed to all applicants when they picked up their applications.

Crain submitted his ballot application to Deputy City Secretary Rebecca Del Toro on February 17. It is undisputed that Crain's application was missing his birthdate. According to Crain, when he handed his application to Del Toro, he asked her, "Do I submit it just like this?" and she nodded yes. In a declaration submitted about a year and a half after his deposition, Crain clarified that he *specifically* asked Del Toro whether he needed to include his birthdate on his application, and she "assured [him] it was not necessary." After reviewing Crain's application in more detail, however, Del Toro contacted a representative for the Secretary of State's office, who informed her that the absence of a birthdate rendered Crain's application incomplete, making him ineligible to appear on the ballot. Casias testified that he notified Crain of the Secretary of State's decision, but informed him that there was still time for him

---

[2] It was not clear from the face of the documents whether they had been redacted or whether the applications simply left the birthdate section blank.

5

Case 5:16-cv-00408-XR   Document 121   Filed 04/03/20   Page 7 of 14
Case: 19-50490      Document: 00515370809      Page: 6      Date Filed: 04/03/2020

No. 19-50490

to apply for write-in candidacy. Crain attempted to submit a write-in candidacy application after 5:00 p.m. on February 21—relying on the midnight deadline communicated in the election deadlines letter—but City Hall was closed. Instead, he submitted his application by email to Casias, and mailed it at a self-service USPS kiosk before midnight. Casias rejected Crain's write-in application because it was not received in City Hall until February 23, 2017. On March 9, the City Council passed an ordinance declaring the 2017 election uncontested, and Hadas retained his position on City Council.

Crain amended his complaint to assert an equal protection claim under 42 U.S.C. § 1983, arguing that defendants discriminated against him on the basis of race when they denied him access to the ballot. On April 29, 2019, the district court granted summary judgment to the defendants, dismissing Crain's claims under both the Fair Housing Act and those filed pursuant to § 1983.

## II.

We begin by addressing Crain's motion for sanctions. Crain alleges that a surveillance camera in City Hall captured footage of the conversation that occurred between Casias and Bustos just before the bidding deadline on December 19, 2014. Though the City produced several hours of video footage, Casias does not appear in the film.

We review a district court's denial of discovery sanctions for abuse of discretion. *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990). The district court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo. *Shumpert v. City of Tupelo*, 905 F.3d 310, 325 (5th Cir. 2018); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are

No. 19-50490

unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chems. Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013) (citation omitted).

Crain styled his motion as a motion to compel the defendants to produce the video footage; in the alternative, however, he asked the district court to impose sanctions, arguing that the defendants should be penalized for their role in altering the footage. "Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (cleaned up). Under the spoliation doctrine, a court may instruct a jury that it "may draw an adverse inference that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." *Whitt v. Stephens Cty.*, 529 F.3d 278, 284 (5th Cir. 2008) (cleaned up).

The district court denied Crain's motion because it found that there was no evidence that video footage of Casias *ever* existed—let alone that it was altered by the defendants.[3] This conclusion was not an abuse of discretion. During his deposition, the defendants' IT specialist, Robert Klaerner, testified that he dutifully preserved the video footage. After Crain filed his complaint, Klaerner downloaded the entirety of the footage and provided it to Crain. Though Klaerner acknowledged that Casias does not appear in the footage, he provided a convincing explanation for his absence: at the time of the bidding, the camera was focused on the City Hall lobby, which was partially obscured by a Christmas tree. Klaerner also testified that the camera "doesn't catch everybody," since it responds only to movement. If the camera failed to sense motion, it would turn off—a feature that explains the disjointed nature of the footage provided to Crain by the defendants.

---

[3] The court reiterated this conclusion when it issued its summary judgment order.

No. 19-50490

The only evidence that suggests video footage of Casias ever existed is Roberts's deposition testimony from 2018. Roberts testified that he reviewed the video about a week after the bidding deadline, and he recalls seeing footage of Casias, who "looked like he was talking to a bench." However, when he was pressed for further information by the City's lawyers, he admitted that it had been years since he reviewed the footage. He seemed to retreat further from his recollection after the lawyers stated that Casias does not actually appear in the video footage, responding, "Oh really? Well, shows you how much I know." Given these facts, it was not clearly erroneous for the district court to find that Casias never appeared in the City's video footage. *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (holding that factual findings underlying sanctions decisions are subject to clear error review).

Moreover, Crain presents no evidence that the defendants intentionally altered or destroyed the footage—or that they did so in order to hide adverse evidence. To the contrary, the defendants admit that Casias spoke with Bustos, undermining Crain's claim that the defendants acted in bad faith. *See United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) (affirming denial of a spoliation motion where there was no evidence that the non-moving party acted in bad faith); *Williams v. Briggs Co.*, 62 F.3d 703, 708 (5th Cir. 1995) (same). It is also undisputed that the City's video cameras did not capture audio, so they would not have been able to confirm the nature of the conversation between Casias and Bustos. We therefore affirm the denial of Crain's motion for sanctions.[4]

---

[4] Though we affirm the denial of the motion for sanctions, we assume the truth of Crain's evidence regarding the conversation between Casias and Bustos, because we interpret the facts in the light most favorable to Crain, the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014).

No. 19-50490

## III.

Crain also appeals the district court's order granting summary judgment to defendants. "We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A.

We begin with Crain's claim under the Fair Housing Act ("FHA"). Section 3604 of the FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale . . . of a dwelling . . . because of race." 42 U.S.C. § 3604(b).[5] To make out a prima facie claim of disparate treatment under the FHA, Crain must establish "(1) membership in [a] protected class, (2) that [he] applied and was qualified to rent or purchase housing[,] (3) that [he] was rejected, and (4) that the housing thereafter remained open to similarly situated applicants." *Inclusive Comms. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 910 (5th Cir. 2019) (considering claim under § 3604(a)).[6]

---

[5] Crain alleges that he intended to use Parcel 5 to build a house. The district court concluded this brought the land within the definition of "dwelling" for the purposes of the FHA. *See* 42 U.S.C. § 3602 (defining "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof"). The city did not assert in district court or on appeal that Crain's allegation was insufficient under this statute. Accordingly, for purposes of this appeal, we assume, without deciding, that Crain's allegation suffices to establish a "dwelling" under the FHA.

[6] In his briefing before the district court, Crain also appears to allege a disparate impact claim. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Comms. Project, Inc.*, 135 S. Ct. 2507, 2518 (2015) (recognizing that disparate impact claims are cognizable under the

9

No. 19-50490

Once a plaintiff establishes a prima facie case of discrimination, courts utilize the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). First, the defendant is given the opportunity to articulate a "legitimate, non-discriminatory reason for the rejection." *Lincoln Prop. Co.*, 920 F.3d at 911. "The burden then shifts back to the plaintiff to rebut the reason offered . . . by showing it is a pretext for discrimination." *Id.* "With discriminatory treatment claims, there can be no liability without a finding that the protected trait (*e.g.*, race) motivated the challenged action." *Id.* at 910.

Like the district court, we assume that Crain established a prima facie case of disparate treatment under the FHA. The defendants have responded by providing a legitimate, non-discriminatory reason for denying Crain's bid: Bustos was the highest bidder for Parcel 5, and he was the only bidder whose bid exceeded the Stouffer appraisal value. The burden thus falls on Crain to establish that the defendants' proffered rationale is pretextual. *Artisan/Am. Corp. v. City of Alvin*, 588 F.3d 291, 295 (5th Cir. 2009). Though racial animus need not have been the "sole motivation" for the adverse action, *Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982), Crain must establish that there is a genuine dispute of material fact regarding whether "race was a significant factor" in the denial of his bid, *Artisan/Am.*, 588 F.3d at 295.

We agree with the district court that Crain has failed to meet this burden. Viewing the evidence in the light most favorable to Crain, he suggests that there were numerous irregularities and procedural flaws that affected the bidding process: (1) he was told that two nonconforming bids had been

---

FHA). The district court did not rule on the validity of this claim, and Crain does not clearly address it in his appeal. However, to the extent that Crain presses this claim on appeal, he has failed to allege that any particular policy or practice of the defendants—including the decision to utilize the Stouffer estimate as the benchmark for acceptable bids—had a disparate impact on African-American bidders. Thus, this claim fails. *Id.* at 2523.

10

Case 5:16-cv-00408-XR Document 121 Filed 04/03/20 Page 12 of 14
Case: 19-50490 Document: 00515370809 Page: 11 Date Filed: 04/03/2020

No. 19-50490

submitted for Parcel 5, (2) Bustos was personally instructed by Casias about the bid requirements, (3) Bustos was given special information to bid "market value" for Parcel 5, and (4) Bustos's bid was labeled as conforming even though there is reason to believe that it was received after the bidding deadline. As the district court explains in its thorough and detailed opinion, however, this evidence does not give rise to an inference that race played any role in the defendants' actions. The fact that Bustos is Hispanic and Crain is African-American does not, in itself, demonstrate that the defendants' actions were motivated by race. Indeed, we have held that "unsound, unfair, or even unlawful" actions do not give rise to an FHA disparate treatment claim "if there is no evidence from which a jury reasonably could infer that race was a significant factor" in the challenged action. *Simms v. First Gilbraltar Bank*, 83 F.3d 1546, 1556 (5th Cir. 1996).

Moreover, while a "discriminatory motive" can sometimes "be inferred from the mere fact of differences in treatment," *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977), Crain does not allege that any of the differences in treatment impacted his ability to submit a winning bid. For example, Crain does not allege that his bid was denied for being late, even though Bustos's was accepted. Nor does he allege that Bustos failed to include the parcel number on the outside of his envelope.[7] And though Crain alleges that Bustos was instructed to bid "market value," he also alleges that he overheard this conversation *and* was given permission to submit a revised

---

[7] As the district court explains in detail, Crain's evidence regarding the treatment of other racial minorities does not support his claim. Though Ernest Banks, another African-American bidder, was denied the opportunity to bid because his envelope failed to include the parcel number, the evidence also demonstrates that two other Hispanic bidders—Juan and Nelda Frias—were treated identically to Banks, and had their bid denied because their sealed bid envelope failed to include the parcel number.

Case 5:16-cv-00408-XR   Document 121   Filed 04/03/20   Page 13 of 14
Case: 19-50490   Document: 00515370809   Page: 12   Date Filed: 04/03/2020

No. 19-50490

bid—placing him on the same footing as Bustos. Even if Casias acted improperly by providing Bustos with this information, Crain provides no evidence to suggest that Casias gave Bustos special treatment because of his race. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–16 (1993) ("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.").

At most, Crain's evidence demonstrates that the defendants failed to ensure a fair bidding process. This failure, however, does not indicate pretext. "[Anti-discrimination] laws 'do not require [defendants] to make proper decisions, only non-[discriminatory] ones.'" *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 784 (5th Cir. 2015) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)); *see also Simms*, 83 F.3d at 1559 ("The FHA does not create a cause of action for . . . failing to follow . . . custom."). Accordingly, we affirm the district court's grant of summary judgment on Crain's FHA claim.

B.

We reach the same conclusion with respect to Crain's equal protection claim filed pursuant to § 1983. "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). "Discriminatory purpose implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at

Case 5:16-cv-00408-XR   Document 121   Filed 04/03/20   Page 14 of 14
Case: 19-50490   Document: 00515370809   Page: 13   Date Filed: 04/03/2020

No. 19-50490

least in part for *the purpose* of causing its adverse effect on an identifiable group." *Taylor*, 257 F.3d at 473 (cleaned up).[8]

Crain has provided no evidence to suggest that he was treated differently than other Selma residents who wanted to run for City Council. To the contrary, the record reflects that Crain was the only candidate who failed to include his birthdate on his application, and the defendants followed a neutral rule when they denied his application. Likewise, while it was certainly misleading and even unfair that the defendants' letter provided an erroneous deadline for the write-in application, Crain does not allege that the defendants accepted any applications that were submitted after 5:00 p.m. on February 21, 2017. In short, Crain has failed to provide "any evidentiary basis on which the court might find that the [defendants] intended to discriminate against him." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988). We therefore affirm the district court's grant of summary judgment on this claim.

IV.

For the foregoing reasons, we AFFIRM.

---

[8] The district court also seemed to analyze Crain's equal protection claim as a class-of-one claim under *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), which allows a plaintiff to bring an equal protection claim if he alleges "that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," *id*. To the extent Crain intended to pursue this claim, it fails for the same reason as his racial discrimination claim—there is no evidence that he was treated differently than any other similarly-situated candidate.